Opinion filed May 16, 2019



In The

# Eleventh Court of Appeals

_____

No. 11-17-00145-CR

_____

**IDRINA LASHAY PRESTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 441st District Court**

**Midland County, Texas**

**Trial Court Cause No. CR47798**

## M E M O R A N D U M   O P I N I O N

After a bench trial, the trial court convicted Idrina Lashay Preston of two counts of abandoning a child. *See* TEX. PENAL CODE ANN. § 22.041 (West 2019). The trial court assessed her punishment at confinement for a term of two years in the State Jail Division of the Texas Department of Criminal Justice. *See id.* § 22.041(d)(1) (offense is a state jail felony if the actor abandons the child with the intent to return for the child). However, the trial court suspended the imposition of

the sentence and placed Appellant on community supervision for a period of two years.

Appellant brings three issues on appeal. She contends that (1) the evidence was insufficient to support her convictions, (2) her right to due process was violated because her convictions were based upon a lack of evidence, and (3) the trial court abused its discretion when it admitted evidence regarding the condition of Appellant's residence. We affirm.

*Background Facts*

The State charged Appellant with abandoning her two children, D.L. and M.S., with the intent to return. The State alleged that she endangered D.L. and M.S. by not leaving them with adequate adult supervision. Appellant entered a plea of "not guilty" to both counts and waived the right to a jury trial.

Midland Firefighter Preston Wright testified that he received an emergency call about a fire at Appellant's residence. When he arrived at the residence, he observed smoke coming from the backyard. Wright knocked on the front door and D.L. answered. D.L. took Wright through the residence to the backyard. Wright testified that there was a small debris fire in the backyard but that there was "great potential" for the fire to spread. Wright extinguished the fire but was not able to determine how the fire started. Wright called the police based on the condition of the residence. He left the scene after the police arrived. Wright was on scene for about thirty minutes.

Wright testified that he did not make contact with a parent, guardian, or anyone over the age of fifteen at the scene. He described the home as being in disrepair: there was a hole in the corner of an outside wall at the front of the house, there was a trash can or barrel full of water and mosquito larvae in the living room, there was no sink in the kitchen, and portions of the interior had missing sheetrock

2

going up into the attic. Wright testified that, based on his experience as a firefighter and as an EMT, the residence was an unsafe place to leave children without supervision. Appellant did not object when Wright testified about the condition of the interior of the residence. However, when the State presented photographs of the exterior of the residence during Wright's direct examination, Appellant objected that the evidence was irrelevant. The trial court overruled Appellant's objection.

Midland Police Officer Cassandra Carrasco testified that she responded to an emergency call for a fire at Appellant's residence. When she arrived at the scene, Officer Carrasco made contact with D.L., an eleven-year-old boy, and M.S., a nine-year-old girl. During the two hours that Officer Carrasco was at the scene, she did not locate or speak with a parent, guardian, or anyone over the age of fifteen.

Officer Carrasco testified that the roof in the back bedroom was caved in and that there was water and mold throughout the residence. The State presented photographs of two Aleve pills and a green leafy substance in a baggie found inside the residence. Officer Carrasco identified the green leafy substance as marihuana. Appellant objected to Officer Carrasco's identification of the substance as marihuana on the grounds that it called for speculation and was "overtly prejudicial"; Appellant also requested a mistrial. The trial court sustained the objection as to the description of the green leafy substance but denied the request for a mistrial. Appellant then objected to these photographs on relevance grounds. The trial court overruled Appellant's objection. Other than the testimony that the green leafy substance was marihuana, Appellant did not object to Officer Carrasco's testimony about the condition of the interior of the residence. Officer Carrasco testified that the residence was an unsafe place to leave children without supervision. Officer Carrasco testified that the living conditions and the fire posed an immediate risk to the welfare and safety of D.L. and M.S.

3

After Officer Carrasco cleared the residence, she asked the children to contact a parent. The children attempted to call Appellant, but to Officer Carrasco's knowledge, Appellant did not answer the phone. Officer Carrasco then asked the children to contact another adult to come supervise them. The children contacted their aunt, and their aunt arrived at the scene about thirty minutes later and took custody of the children.

Appellant testified on her own behalf during the guilt/innocence phase. She testified that she was at work from nine in the morning until two in the afternoon on the date of the alleged offense. Appellant testified that, when she went to work, the children were in the living room of the residence with Appellant's aunt, Rita Hunter, who had agreed to stay with the children while Appellant was at work.[1] Hunter had watched the children in the past, and according to Appellant, Hunter cared for the children properly and had never before left the children alone. After Appellant returned from work, she learned that Hunter had left for a little while. Appellant testified that she expected the children to be supervised the entire time she was at work and that she did not intend to leave the children unsupervised.

Appellant testified that the residence belonged to her great-grandmother but that Appellant was living there and repairing the residence to live in permanently with her children. According to Appellant, the children were in that home only because D.L. had recently gotten into trouble for breaking into someone's house. Before D.L. got into trouble, D.L. lived with his father, and M.S. lived with Appellant's sister.

---

[1]Hunter did not testify at trial. In this regard, Appellant testified that Hunter passed away prior to trial.

*Sufficiency of the Evidence and Due Process*

In her first issue, Appellant contends that the evidence was insufficient to support her convictions. Appellant contends that there was no evidence that she abandoned her children because she left her children with a caretaker. We disagree.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

A person commits the offense of abandoning a child if, "having custody, care, or control of a child younger than 15 years, he intentionally abandons the child in any place under circumstances that expose the child to an unreasonable risk of

harm." PENAL § 22.041(b). Abandon means to "leave a child in any place without providing reasonable and necessary care for the child, under circumstances which no reasonable, similarly situated adult would leave a child of that age and ability." *Id.* § 22.041(a).

The El Paso Court of Appeals dealt with a similar situation in *Castillo v. State*, 2006 WL 1710062, at \*4 (Tex. App.—El Paso 2006, no pet.) (not designated for publication). The defendant in *Castillo* asserted that she left her three children at home with an adult roommate. *Id.* at \*1–2. The next morning, the children were found at home alone. *Id.* The defendant asserted that the evidence was insufficient to support her convictions because there was no evidence that she left her children at home alone. *Id.* at \*4. The court of appeals rejected her argument that, in order to obtain a conviction for child abandonment, the State is required to prove that she left her children alone. *Id.* Furthermore, the court determined that a rational trier of fact could have concluded that the defendant's act of leaving the children with a roommate who would later leave the children alone "did not constitute reasonable and necessary care and a reasonable and similarly situated adult would not have left the children in [the roommate's] care. *Id.*

There is no dispute that the children in this case were under the age of fifteen. When firefighters and police officers arrived on the scene, there was no adult present to supervise the children. Furthermore, the children were not able to immediately contact Appellant. Officer Carrasco testified that, during the two hours that she was at the scene, she did not locate or speak with a parent, guardian, or anyone over the age of fifteen. Because the children were alone for at least two hours at the residence, the trial court could have inferred that Appellant did not arrange for anyone to watch the children while Appellant was at work. In this regard, Appellant's testimony that Hunter was watching the children when Appellant went

6

to work turned on Appellant's credibility. We presume that the trial court resolved this conflict in favor of the State. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778; *see Harris v. State*, No. 05-10-00480-CR, 2012 WL 833595, at *4 (Tex. App.— Dallas Mar. 13, 2012, no pet.) (not designated for publication).

Furthermore, there is evidence supporting a conclusion that Appellant left the children without adequate adult supervision. As noted previously, the children were left unattended in circumstances wherein a fire started while the children were unsupervised. Additionally, they remained unsupervised for at least two hours while police officers waited for an adult to return to the home. Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt the elements of abandoning a child. We overrule Appellant's first issue.

In her second issue, Appellant contends that her right to due process was violated because her convictions were based upon insufficient evidence. Appellant contends that no evidence shows that Appellant abandoned her children or left her children without adequate adult supervision. Pursuant to the Due Process Clause of the Fifth and Fourteenth Amendments, no person may be convicted of a criminal offense and denied his liberty unless his criminal responsibility for the offense is proved beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970); *Alvarado v. State*, 912 S.W.2d 199, 206–07 (Tex. Crim. App. 1995); *see* U.S. CONST. amends. V, XIV. In addressing Appellant's first issue, we have determined that the evidence was sufficient to support Appellant's convictions. Therefore, Appellant was not denied due process of law as alleged in her second issue. We overrule Appellant's second issue.

*Admission of Evidence*

In her third issue, Appellant contends that the trial court abused its discretion when it admitted extraneous evidence regarding the condition of the residence. She contends on appeal that the admission of this evidence violated Texas Rules of Evidence 403 and 404 and "tempts" a guilty verdict. Whether to admit evidence at trial is a preliminary question to be decided by the trial court. TEX. R. EVID. 104(a); *Tienda v. State*, 358 S.W.3d 633, 637–38 (Tex. Crim. App. 2012). We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)).

Under Rule 403, a trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. Rule 404(b) prohibits the admission of extraneous-offense evidence at the guilt phase of a trial to prove that a defendant committed the charged offense in conformity with bad character. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim App. 2011) (citing TEX. R. EVID. 404(b)). However, extraneous-offense evidence may be admissible when it has relevance apart from character conformity. *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003)). Such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2). Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence." TEX. R. EVID. 401.

We first note that Appellant did not make objections under Rule 403 and Rule 404 to most of the evidence offered at trial concerning the condition of the home. When the prosecutor sought to offer four photographs of the exterior of the home through Wright, Appellant made a general relevancy objection that the trial court overruled. Wright subsequently testified, without objection, about the condition of the interior of the home. The prosecutor then offered four photographs of the interior of the home through Wright. Appellant only objected to these photographs on the basis that Wright was unable to authenticate them. The trial court overruled this objection.

Officer Carrasco subsequently testified, without objection from Appellant, about the condition of the home. The prosecutor subsequently discussed two photographs of the interior of the home with Officer Carrasco. Officer Carrasco testified that one photograph depicted two Aleve pills and that the other photograph depicted a dirty plate and a plastic baggie containing a green leafy substance. Appellant objected that Officer Carrasco was not qualified to identify the leafy substance as marihuana, and the trial court sustained Appellant's objection. Appellant also moved for a mistrial on the basis that the officer's description of the substance was "overtly prejudicial," which the trial court denied. When the prosecutor subsequently offered the two photographs into evidence, Appellant lodged only a general relevancy objection, which the trial court overruled.

A Rule 403 objection is not implicitly contained in relevancy or Rule 404(b) objections; rather, a specific Rule 403 objection must be raised to preserve error. *Lopez v. State*, 200 S.W.3d 246, 251 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (citing *Montgomery*, 810 S.W.2d at 388). However, a general relevancy objection will permit review under Rule 404(b) if the trial court is apprised of the nature of the complaint. *Id.* (citing *Montgomery*, 810 S.W.2d at 387). Appellant

only made an objection about prejudicial evidence with respect to Officer Carrasco's testimony that the leafy substance was marihuana. And as previously noted, Appellant only objected on relevancy grounds to a portion of the evidence about the exterior condition of the home. Accordingly, Appellant has not preserved error regarding her appellate complaints concerning the bulk of the evidence offered at trial about the condition of the home. *See* TEX. R. APP. P. 33.1.

Here, the evidence presented at trial regarding the condition of the residence was that (1) there was a hole in the corner of an outside wall; (2) there was a trash can or barrel full of water and mosquito larvae in the living room; (3) there was no sink in the kitchen; (4) portions of the interior had missing sheetrock going up into the attic; (5) the roof in the back bedroom was caved in; (6) there was water and mold everywhere; and (7) there was a baggie containing a green leafy substance and two Aleve pills on a table. Even if Appellant had preserved error regarding all the evidence of the condition of the residence, this evidence had relevance apart from character conformity—to prove that Appellant left the children in a place that would expose them to an "unreasonable risk of harm." *See* PENAL § 22.041(b). The evidence of the condition of the home makes it more probable that Appellant left D.L. and M.S. in a residence that exposed the children to an "unreasonable risk of harm" than without this evidence. *See* TEX. R. EVID. 401.

Moreover, Rule 404(b) allows for admission of certain "same-transaction contextual evidence." *Devoe*, 354 S.W.3d at 469; *see Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000); *Nguyen v. State*, 177 S.W.3d 659, 667 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). This kind of evidence is admissible to show the context in which the criminal acts occurred. *Wesbrook*, 29 S.W.3d at 115 (citing *Archer v. State*, 607 S.W.2d 539, 542 (Tex. Crim. App. 1980)); *see also Lockhart v. State*, 847 S.W.2d 568, 571 (Tex. Crim. App. 1992). The factfinder "is

entitled to know all the relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum." *Nguyen*, 177 S.W.3d at 666–67 (citing *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986)). Extraneous acts are admissible when they are "so intertwined with the State's proof of the charged offense that avoiding reference to [them] would make the State's case incomplete or difficult to understand." *Smith v. State*, 316 S.W.3d 688, 699 (Tex. App.—Fort Worth 2010, pet. ref'd) (citing *Prible v. State*, 175 S.W.3d 724, 731–32 (Tex. Crim. App. 2005)). In other words, "evidence of extraneous offenses that are indivisibly connected to the charged offense and necessary to the State's case in proving the charged offense" may be admissible. *Lockhart*, 847 S.W.2d at 571.

To the extent that the evidence about the condition of the home constituted extraneous-offense evidence, it was admissible as same transaction contextual evidence. The condition of the residence was so intertwined and indivisibly connected with the allegation that Appellant abandoned her children that the trial court was entitled to hear evidence regarding the condition of the home. *See Lockhart*, 847 S.W.2d at 571; *Smith*, 316 S.W.3d at 699; *see also* PENAL § 22.041(b). Under these circumstances, we cannot conclude that the trial court abused its discretion by admitting the evidence.

Finally, we have previously noted that Appellant lodged only a "speculation" and a "prejudice" objection to Officer Carrasco's testimony that the green leafy substance was marihuana. However, the trial court sustained Appellant's objection. Appellant then sought a mistrial based on the same allegation. We review a trial court's denial of a motion for mistrial under an abuse of discretion standard. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). We conclude that the trial court did not abuse its discretion by denying Appellant's motion for mistrial. The fact that the

underlying trial arises from a bench trial rather than a jury trial is significant to our analysis. *See Ex parte Twine*, 111 S.W.3d 664, 668 (Tex. App.—Fort Worth 2003, pet. ref'd) (the danger of unfair prejudice under Rule 403 is greatly reduced when a judge is sitting as the trier of fact); *see also Corley v. State*, 987 S.W.2d 615, 621 (Tex. App.—Austin 1999, no pet.) (when a case is tried to a trial court rather than to a jury, the danger that evidence will be considered for an improper purpose is diminished). We overrule Appellant's third issue

*This Court's Ruling*

We affirm the judgments of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


May 16, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.